Delivered December 7, 1892.

---

## H. H. SWANK v. SAN ANTONIO & ARANSAS PASS RAILWAY COMPANY.

### No. 43.

1. **Construction of Contract.**—Example of application of the rules, that in the construction of a contract the whole instrument is to be regarded, and one part interpreted by another, and that every part should take effect, if possible, consistent with the rules of law and the intent of the parties.

2. **Same.**—See example where an inconsistent statement was disregarded in view of the manifest intent of the parties as expressed in other parts of the contract.

3. **Same.**—In a shipping contract executed by the San Antonio & Aransas Pass Railway Company for the transportation of horses from Beeville station on its line to Junction City, Kansas, it was recited that Junction City was the end of the road operated by said railway company. The contract also recited that its end was at San Antonio, Texas, limiting its liability to losses on its own line. In suit for damages to the freight while on a connecting line, *held*, that the entire contract corrected the misrecital as to the end of the line of railway of said company.

APPEAL from Karnes. Tried below before Hon. H. CLAY PLEASANTS.

*Lane & Mayfield,* for appellant.—1. This being a suit upon a written contract, in which it is expressly stipulated that appellee operates the line of railway from Beeville, Texas, to Junction City, Kansas, and that its road terminated at Junction City, Kansas, it was not competent for appellee to plead that its line of road terminated at any other point than at Junction City, Kansas, without alleging some fraud or mistake in the execution of same.

2. Parol testimony is not admissible to vary or contradict the terms of a written contract, without alleging fraud or mistake in the execution of same. Self v. King, 28 Texas, 552; Ranger & Co. v. Hearne, 37 Texas, 30; Hughes v. Sandal, 25 Texas, 165; Franklin v. Mooney, 2 Texas, 452; Donley v. Bush, 44 Texas, 7; Menard v. Sydnor, 29 Texas, 262; Laws. on Cont. of Carr., sec. 113; 1 Greenl. Ev., secs. 275, 276·

Long v. Railway, 50 N. Y., 76; White v. Ashton, 51 N. Y., 280; Condict v. Railway, 54 N. Y., 500.

*Proctor & Proctor*, for appellee.—The written live stock contract in this case, properly construed, only bound appellee as common carrier to transport said stock of appellant to San Antonio, Texas, proved to be the end of the line of the San Antonio & Aransas Pass Railway Company, and to deliver same to the next succeeding carrier on the route to Junction City, Kansas, over which said stock were way-billed; and the court did not err in rendering judgment for appellee upon appellant's admission that all damage occurred at Taylor, Texas, on the International & Great Northern Railway. Hunter v. Railway, 76 Texas, 195; Railway v. Baird, 75 Texas, 256; Harris v. Howe, 74 Texas, 534; Railway v. Allison, 59 Texas, 193; Hutch. on Carr., 149, 150; 3 Wood's Ry. Law, 1572, note 3; 2 Am. and Eng. Encyc. of Law, 866; Railway v. Mt. Vernon Co., 4 So. Rep., 356; Trust Co. v. Railway, 31 Fed., Rep., 247; Laws. on Carr., 240; 2 Beach Ry. Law, 920; Berg v. Railway, 16 Am. and Eng. Ry. Cases, 229–231.

FISHER, Chief Justice.—This suit was instituted by appellant, on the 2nd day of February, 1889, in the District Court of Karnes County, Texas, upon a written live stock contract, which was made a part of appellant's petition, to recover from appellee the sum $1200 damages to 109 head of stock, which appellee received from appellant on May 11, 1888, at Beeville, Texas, to be transported by appellee over its line of railway from said Beeville to Junction City, Kansas, under said written live stock contract.

Appellee answered, and admitted that the stock mentioned were shipped under said written live stock contract, but set up that its line of railway on said route only extended to the city of San Antonio, Texas, and contended that by the terms of said written live stock contract its liability as a common carrier ceased upon the transportation of said stock to San Antonio; and that the injuries and damages to said stock resulted while the stock was in possession of another carrier.

The case being tried by the court without the intervention of a jury, judgment was rendered for appellee against appellant.

1. On the 11th day of May, 1888, appellant and appellee entered into the following contract of shipment of the stock in controversy:

"THE SAN ANTONIO & ARANSAS PASS RAILWAY COMPANY.

"*Rules and Regulations for the Transportation of Live Stock.*

"No station master of this company has any power or authority to bind this company in regard to shipment of live stock except by written contract, in the following form; neither has such station master power or

authority to agree to furnish cars to be loaded with live stock, at any particular time, or to agree to furnish, under any circumstances, any particular class or kind of cars.

"Live stock will be taken in less than carload lots between points within the State of Texas at the rate of one-half of 1 cent per 100 pounds, actual weight, per mile, the rate in no instance to be less than 30 cents per 100 pounds. Between other points, the rates on less than carload shipments will be subject to the charge for estimated weights as provided by joint Texas classification in its application to interstate business.

"The San Antonio & Aransas Pass Railway Company will not assume any liability over the actual value, and in no case exceeding $100 per head on horses and valuable stock, except by special agreement.

"For the purpose of taking care of stock, the owner or men in charge, in proportion to the number of cars, as endorsed hereon, will be passed on the train with it, and all persons thus passed are at their own risk of any personal injury whatever, and will agree to sign release to that effect endorsed on the contract.

### " LIVE STOCK CONTRACT.

### " BEEVILLE STATION, May 11th, 1888.

"This agreement, made between the San Antonio & Aransas Pass Railway Company, of the first part, and H. H. Swank, of the second part, witnesseth: That whereas the San Antonio & Aransas Pass Railway Company transports live stock as per above rules and regulations, all of which are hereby made a part of this contract by mutual agreement between the parties hereto; now, therefore, for the considerations and mutual covenants and conditions herein contained, the said first party will transport for the said second party the live stock described below, and the parties in charge thereof, as herein provided, viz., —— carloads of horses, said to contain —— head of such stock, from the station where this contract is executed to Junction City, Kansas, station, the end of the line of road operated by the party of the first part on the route over which such stock are way-billed, there to be transferred to the railway company over which said live stock are way-billed for further transportation by said railway company, the said stock being way-billed through and consigned to H. H. Swank at Junction City station; and the party of the first part covenants and agrees that the freight charge from point of shipment to final destination shall be only the sum of—— dollars per carload, the same being a through rate lower than the local rates which might be lawfully charged by party of the first part, and for and in consideration of which through rate and the guaranty thereof by the party of the first part, the party of the second part hereby covenants and agrees as follows:

"First. That he does hereby release said first party from any and all

liability for delay in shipping said stock after delivery thereof to its agent, and from any delay in receiving same after being tendered to its agent.

"Second. That he does accept for the transportation of said stock the cars tendered him by party of the first part, and agrees that they are in all things satisfactory to him; and he hereby assumes all risk of injury which the animals or either of them may receive in consequence of any of them being wild, unruly, or weak, or of their maiming each other or themselves, or in consequence of heat or suffocation or other ill effects of being crowded in the cars, or on account of being injured by the burning of hay, straw, or other material used by the person or persons in charge of said stock for feeding or bedding said stock or otherwise; and all risk of escape or robbery of said stock, or of loss or damage from any other cause or thing not resulting from the negligence of the agents of the party of the first part, said negligence not to be assumed, but to be proved by the party of the second part.

"Third. That the party of the second part will load, unload, and reload said stock at his own risk, and feed, water, and attend to the same at his own expense and risk while it is in the stock yards of the party of the first part awaiting shipment, and while on cars, or at feeding or transfer points, or where it may be unloaded for any purpose.

"Fourth. That party of the second part will see that said stock are securely placed in the cars furnished, and that the cars are safely and properly fastened so as to prevent the escape of said stock therefrom.

"Fifth. That in case the party of the first part shall furnish laborers to assist in loading and unloading said stock at any point, such laborers shall be subject to the orders of the person representing the shipper in charge of said stock, and shall be deemed employes of the party of the second part while so assisting.

"Sixth. That in case the party of the first part should for any reason undertake to water and feed said stock, it shall not be liable for insufficient supplies nor the imperfect discharge of said undertaking, it being expressly understood that the same is not a duty imposed upon it as a carrier of said stock.

"Seventh. And the party of the second part further agrees, that as a condition precedent to his right to recover any damages for any loss or injury to said stock, he, or his agent, the person in charge of said stock, shall give notice in writing of his claim therefor, and the full amount of such loss or damage, to the station agent of the party of the first part at the station hereinbefore named as the end of the line of the party of the first part, before said stock is removed from station, and before said stock is mingled with other stock or delivered to any connecting line of railway.

"Eighth. It is further stipulated and agreed between the parties hereto, that, as the live stock mentioned herein is to be transported over the road

or roads of other railway companies and in other cars than those of this company, and as the party of the first part is only to transport said stock to the aforesaid station named as the end of its line on the route over which said stock is to be shipped, the party of the first part is only to be bound for the transportation of said stock to said station; it being understood and agreed by both parties hereto that the only purpose of making this contract is, that the party of the first part shall transport said stock to said station and protect the through rate of freight named herein for the benefit of the party of the second part; and the party of the first part shall in no manner be responsible for any loss or injuries occurring to said stock after the same has left the line of the San Antonio & Aransas Pass Railway Company, nor be responsible for the carriage beyond.

" Ninth. It is further expressly agreed by the party of the second part, that the other railway lines over which said stock are way-billed in order to reach their destination, having participated in making said through rate of freight of which the party of the second part has the benefit hereunder, when they receive said stock for transportation under this contract shall, like the party of the first part, not be responsible for injuries or loss occurring beyond their respective lines of road, and shall each be entitled to the same notice of loss or damage occurring upon their respective lines as is herein provided for the party of the first part, to be given to the agent of each railway company at the station ending the run of said stock over such road.

" Tenth. The second party further agrees, for the consideration aforesaid, that in case of total loss of any of said stock from any cause for which the carrier will be liable to pay for the same, the actual cash value at the time and place of shipment, but in no case to exceed $100 per head, shall be taken and deemed as full compensation therefor; and in case of injury or partial loss the amount of damage to be recovered shall be in the same proportion. And in the event of any proceeding in court to recover damages upon this shipment, said actual cash value at the time and place of shipment and not at the place of destination shall control the court and jury in estimating. the amount which may be due to the shipper.

" Eleventh. This contract does not entitle the holder or other parties to ride in the cars of any train except the train in which his stock referred to is drawn or taken. Neither does it entitle him (and the party of the second part, named in this contract, so expressly stipulates, admits, and agrees) to return passage from Junction City, Kansas, unless this said contract is presented within twenty days from the date hereof; and that no person except the party of the second part, and parties who accompany him in charge of said stock for the purpose of assisting him in taking care of same, as specified in and upon said contract, and does not include women, infants, or other persons unable to do and perform the

services required of parties in charge, as expressed on this contract, shall be entitled to such return passage within the said twenty days; the object, purpose, and intent of the return passage being to enable the said party of the second part hereto, or his men in charge, as expressed in contract, and no other person, to return to Beeville, Texas, thereon at any time within twenty days from date hereof, and not thereafter.

" The evidence that the said party of the second part, after a full understanding thereof, assents to all the conditions of the foregoing contract, is his signature hereto.

"D. B. Saffold,

"Station Master at Beeville Station, San Antonio & Aransas Pass Railway Company.

"H. H. Swank,
"Shipper.

"Witness:   H. C. Nash.

"(Executed in duplicate.)"

2. The line of the San Antonio & Aransas Pass Railway Company, on the route from Beeville, Texas, to Junction City, Kansas, terminated at San Antonio, Texas.

3. The injuries and damage to the stock occurred at Taylor, Texas, on the line of the International & Great Northern Railway Company, a line of railway on the route from Beeville, Texas, to Junction City, Kansas.

4. The amount of damages sustained by appellant is the sum of $1090.

The appellant contends that the court erred in permitting evidence to be introduced, over his objection, to the effect that San Antonio, Texas, is the terminus of the San Antonio & Aransas Pass Railway, for the reason that the contract of shipment names Junction City, Kansas, as the station at the end of the line of railway operated by appellee, and that the effect of such evidence would be to vary and change the terms of the written contract; and that the court erred in giving such effect to the contract as would terminate the liability of appellee at San Antonio, Texas, and in not holding it liable under the contract for damages resulting on the entire line of route from Beeville, Texas, to Junction City, Kansas.

These are the main questions in the case, although others are suggested by assignments of error, which we will not notice, as not necessary to a disposition of the case.

The court below, in admitting evidence showing that San Antonio, Texas, was the terminus of the San Antonio & Aransas Pass Railway, evidently regarded, from the entire range of all the provisions of the contract of shipment, that the terminal point of that railway was uncertain

as gathered from the contract, and that in this respect the contract was ambiguous, and that such testimony was admissible as tending to give it certainty.

If the contract in this respect is uncertain, the evidence was admissible; and the court properly construed the contract, as such evidence would not have the effect of changing the terms of the contract, but simply gives effect to its terms and renders that certain which was otherwise uncertain. If there is no uncertainty in the contract in this respect, the evidence was not admissible, and the court erred in its construction of the contract.

By reference to the contract, it will be seen that it provides that the horses are to be shipped from Beeville station to "Junction City, Kansas, the end of the line of road operated by the party of the first part [the appellee] on the route over which such stock are way-billed, there to be transferred to the railway company over which said live stock are way-billed for further transportation by said railway company, the stock being way-billed through and consigned to H. H. Swank at Junction City station." This is the provision of the contract that appellant contends fixes Junction City, Kansas, as the terminal point on appellee's line of road.

The eighth and ninth subdivisions of the contract of shipment are as follows:

"Eighth. It is further stipulated and agreed between the parties hereto, that as the live stock mentioned herein is to be transported over the road or roads of other railway companies and in other cars than in those of this company, and as the party of the first part is only to transport said stock to the aforesaid station named as the end of its line on the route over which said stock is to be shipped, the party of the first part is only to be bound for the transportation of said stock to said station; it being understood and agreed by both parties hereto that the only purpose of making this contract is, that the party of the first part shall transport said stock to said station and protect the through rate of freight named herein for the benefit of the party of the second part; and the party of the first part shall in no manner be responsible for any loss or injuries occurring to said stock after the same has left the line of the San Antonio & Aransas Pass Railway Company, nor to be responsible for the carriage beyond.

"Ninth. It is further expressly agreed by the party of the second part, that the other railway lines over which said stock is way-billed in order to reach their destination, having participated in making said through rate of freight, of which the party of the second part has the benefit hereunder, when they receive said stock for transportation under this contract shall, like the party of the first part, not be responsible for injuries or loss occurring beyond their respective lines of road."

It is seen by these provisions of the contract, that it is expressly agreed that the stock is to be shipped over lines of road other than that owned

or controlled by appellee, and that appellee shall in no manner be responsible for any loss or injuries occurring to said stock after the same has left the line of the San Antonio & Aransas Pass Railway Company, nor responsible for carriage beyond.

It is not questioned but that Junction City, Kansas, was the final destination of the stock shipped.

It is evident, from the two provisions of the contract last quoted, that the stock, in order to reach their final destination, would have to pass over roads other than those owned or controlled by appellee. If such was not the case, why these provisions of the contract that in effect so provide? If the stock was to be carried through on the line of road owned or controlled by appellee, then these provisions of the contract are out of place, and express a fact that is not true, and provide for a contingency that in no possible event could in the nature of things occur. We can not assume that the parties to this contract intended that these provisions should not be given a meaning as well as other parts of the contract; and it is our duty in construing the contract to view it as a whole and give it such meaning as will best effectuate the intention of the parties to the instrument.

That provision of the contract stating that Junction City, Kansas, is the end of the line of road operated by appellee is evidently inconsistent with those provisions of the contract stating that the stock must go over other lines of road in order to reach their destination—that is, Junction City. This inconsistency does not produce such an uncertainty as would render the contract void, but we think effect can be given to all of its provisions, and it can be explained upon the hypothesis that Junction City was simply named in the contract of through shipment as the place of final destination of the stock, and that appellee should not be responsible for damages resulting beyond the terminus of its own line, which is shown by the evidence to be San Antonio, Texas.

We find no error in the record, and affirm the judgment of the court below.

*Affirmed*

Delivered December 7, 1892.